Filing # 216806960 E-Filed 02/14/2025 01:30:24 PM

### IN THE COURT OF THE TWELFTH JUDICIAL CIRCUIT
### IN AND FOR SARASOTA COUNTY, FLORIDA

REBECCA BAILEY, as Parent and
Guardian of C.B.
      Plaintiff,           CASE NO.:

vs.

AMAZON.COM SERVICES LLC;
EXRBYKOSHI JINHAOYOU DIANZI
YOUXIANGONGSI d/b/a "EXRBYKO",
and POWER WAREHOUSE LLC

      Defendants.

_____/

## SUMMONS

**THE STATE OF FLORIDA:**
**TO: AMAZON.COM SERVICES, LLC.**
**c/o Registered Agent**
1201 Hays Street
Tallahassee, FL 32301-2525

Pursuant to Fla. R. Civ. P. 1.070, YOU ARE HEREBY SUMMONED to file your written response or defenses, if any, to the Complaint in this action with the Clerk of this Court and to serve a copy on the Plaintiff's attorney listed below within **20 calendar days** after service of this Summons on you, exclusive of the day of service.

Failure to respond in writing may result in a judgment by default being entered against you for the relief demanded in the Complaint.

1

**Plaintiffs' Attorney:**

**KRISTOPHER A. BONHAM, ESQ.**
**MORGAN & MORGAN, P.A.**
1700 Palm Beach Lakes Blvd, Suite 500
West Palm Beach, FL 33401
Telephone: (561) 812-1547
Email: kbonham@forthepeople.com


WITNESS my hand and the seal of this Court on this the _____ day of
_2/14/2025_.

KAREN E. RUSHING
Clerk of the Circuit Court
CLERK OF THE CIRCUIT COURT

By _Nathalia Barbosa_
As Deputy Clerk

## REQUEST FOR ACCOMMODATIONS BY PERSONS DISABILITY

If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance.

The Sarasota County Clerk and Comptroller's Jury Office is designated as the initial point of contact for ADA related matters.

**Sarasota Jury Office**
P.O. Box 3079
Sarasota, FL 34230-3079
Telephone: (941) 861-8000

If you are deaf, hard-of-hearing, or voice impaired, please call 711.

Please contact the Sarasota Jury Office at least seven (7) days before your scheduled court appearance or jury service, or immediately upon receiving an official notification if the time before the scheduled appearance is less that seven (7) days.

Please see the Court website for the Accommodation Request Form:

https://www.sarasotaclerk.com/about-us/accessibility/ada-accommodations

- Title II Accommodation Request Form (PDF)

Required Language for Court Documents

The Twelfth Judicial Circuit Court requires notices of court proceedings, and processes compelling appearance at court proceedings, to contain specific language. Read the court's Administrative Order 2015-4.2, regarding the Americans with Disabilities Act of 1990, for more information.

Filing # 216806960 E-Filed 02/14/2025 01:30:24 PM

# IN THE COURT OF THE TWELFTH JUDICIAL CIRCUIT
## IN AND FOR SARASOTA COUNTY, FLORIDA

REBECCA BAILEY, as Parent and
Guardian of C.B.

        Plaintiff,

                                CASE NO.:

vs.

AMAZON.COM SERVICES LLC;
EXRBYKOSHI JINHAOYOU DIANZI
YOUXIANGONGSI d/b/a "EXRBYKO",
and POWER WAREHOUSE LLC

        Defendants.

_____/

## PLAINTIFF'S COMPLAINT

COMES NOW the Plaintiff, REBECCA BAILEY, as Parent and Guardian of C.B., by and through his undersigned counsel, hereby file this Complaint against Defendants AMAZON.COM SERVICES LLC; EXRBYKOSHI JINHAOYOU DIANZI YOUXIANGONGSI . and POWER WAREHOUSE LLC for the claims stated herein. In support thereof, the Plaintiff states as follows.

## SUMMARY OF THE ACTION

1.      Plaintiff brings this civil action to recover for the damages and injuries her minor son sustained from an unreasonably dangerous and defective electronic bike ("Subject E-Bike") designed, manufactured, distributed, sold, inspected, repaired and maintained by the Defendants that malfunctioned causing a devastating injury to Plaintiff.

2.      The Plaintiff sues Defendants for their role in negligently designing, manufacturing, distributing, supplying, and selling the Subject E-Bike in its defective condition and for otherwise causing the incident and C.B's injuries.

3.      Plaintiff demands a jury trial for all claims triable pursuant to Fla. R. Civ. P.

Filed 02/14/2025 03:58 PM - Karen E. Rushing, Clerk of the Circuit Court, Sarasota County, FL

1.430.

## THE PARTIES JURISDICTION & VENUE

4.      At the time of the incident giving rise to this Complaint, Plaintiff, Rebecca Bailey ("Rebecca"), was a Florida resident and citizen who lived in North Point, Florida.

5.      At the time of the incident giving rise to this Complaint, Rebecca's minor child C.B. was a Florida resident and citizen who lived in North Point, Florida

6.      This Court has subject matter jurisdiction because this is an action to recover damages in excess of $50,000.00, exclusive of fees, costs, and interest.

7.      Defendant AMAZON.COM SERVICES LLC ("Amazon") is a foreign limited liability company registered in Delaware. Amazon may be served with process through its registered agent Corporation Services Company at 1201 Hayes Street, Tallahassee, Florida 32301.

8.      Defendant DONGGUANSHI JINHAOYOU DIANZI YOUXIANGONGSI ("EXRBYKO") is a Chinese corporation. Defendant EXRBYKO may be served with process through the Hague convention at Room 102, Building 1, No. 14 Hongye South Road, Xinwan, Humen Town EXRBYKO Guangdong CN 523932.

9.      Defendant POWER WAREHOUSE LLC ("Power") is a New Jersey limited liability company. Defendant Power may be served with process through its registered agent Kirk Liu at 3849 S. Delsea Drive Suite D000, Vineland, NJ 08360.

10.      This Court is authorized under Florida law to exercise personal jurisdiction over Amazon pursuant to the Florida Long-Arm Statute, Fla. Stat. §§ 48.193(1)(a)(1), (1)(a)(2), and (1)(a)(6), because the claims stated herein arise out of Amazon's:

   a. Operating, conducting, engaging in, or carrying on a business or business venture in Florida or having an office or agency in Florida;
   b. Committing a tortious act within Florida; or

Page **2** of **20**

c.  Causing injury to persons or property within Florida arising out of an act or omission committed outside Florida where, at or about the time of the injury, either (i) Amazon was engaged in solicitation or service activities within Florida, or (ii) products, materials, or things processed, serviced, or manufactured or distributed by Amazon anywhere were used or consumed in Florida in the ordinary course of commerce, trade, or use.

11.  This Court further has the constitutional authority to exercise personal jurisdiction over Amazon because Amazon purposefully availed and targeted the Florida market to sell consumer products in Florida. Defendant's conduct demonstrations within Florida purely to fuel the distribution and sale of products within the State of Florida. This includes specifically reaching out and targeting contracts with the State of Florida and promoting the Subject E-Bike through discounts, targeted ads, and product protection offers. All of Amazon's contacts with Florida are related to importing, marketing, distributing and selling the products to Florida consumers in a manner akin to a traditional retailer. Plaintiff's claims arise out of those contacts, and exercising personal jurisdiction over Amazon is proper. Further, exercising jurisdiction over Amazon would be consistent with the traditional notions of fair play and substantial justice.

12.  This Court is authorized under Florida law to exercise personal jurisdiction over EXRBYKO pursuant to the Florida Long-Arm Statute, Fla. Stat. §§ 48.193(1)(a)(1), (1)(a)(2), and (1)(a)(6), because the claims stated herein arise out of EXRBYKO's:

a.  Operating, conducting, engaging in, or carrying on a business or business venture in Florida or having an office or agency in Florida;

b.  Committing a tortious act within Florida; or

c.  Causing injury to persons or property within Florida arising out of an act or omission committed outside Florida where, at or about the time of the injury, either (i) EXRBYKO was engaged in solicitation or service activities within Florida, or (ii) products, materials, or things processed, serviced, or manufactured or distributed by EXRBYKO anywhere were used or consumed in Florida in the ordinary course of commerce, trade, or use.

13.  This Court further has the constitutional authority to exercise personal jurisdiction over EXRBYKO because the EXRBYKO purposefully availed and targeted the Florida market to

Page **3** of **20**

sell the Subject E-Bike in Florida through Amazon by targeting Florida consumers via the Amazon system. Defendant's conduct demonstrations within Florida purely to fuel the distribution and sale of products within the State of Florida. This includes specifically reaching out and targeting contracts with the State of Florida. All of EXRBYKO's contacts with Florida are related to manufacture, importing, marketing, distributing and selling E-Bikes to Florida residents. Plaintiff's claims arise out of those contacts, and exercising personal jurisdiction over EXRBYKO is proper. Further, exercising jurisdiction over EXRBYKO would be consistent with the traditional notions of fair play and substantial justice.

14.    This Court is authorized under Florida law to exercise personal jurisdiction over Power pursuant to the Florida Long-Arm Statute, Fla. Stat. §§ 48.193(1)(a)(1), (1)(a)(2), and (1)(a)(6), because the claims stated herein arise out of Power's:

    a.  Operating, conducting, engaging in, or carrying on a business or business venture in Florida or having an office or agency in Florida;

    b.  Committing a tortious act within Florida; or

    c.  Causing injury to persons or property within Florida arising out of an act or omission committed outside Florida where, at or about the time of the injury, either (i) Power was engaged in solicitation or service activities within Florida, or (ii) products, materials, or things processed, serviced, or manufactured or distributed by Power anywhere were used or consumed in Florida in the ordinary course of commerce, trade, or use.

15.    This Court further has the constitutional authority to exercise personal jurisdiction over Power because the Power purposefully availed and targeted the Florida market to import, and distribute the Subject E-Bike in Florida through Amazon by into Florida. Defendant's conduct demonstrations within Florida purely to fuel the distribution and sale of products within the State of Florida. This includes specifically reaching out and targeting contracts either unilaterally or in conjunction with it co-Defendants to facilitate the introduction of E-Bikes into the State of Florida. All of Power's contacts with Florida are related to manufacture, importing, marketing, distributing

and selling E-Bikes to Florida residents. Plaintiff's claims arise out of those contacts, and exercising personal jurisdiction over Power is proper. Further, exercising jurisdiction over Power would be consistent with the traditional notions of fair play and substantial justice

16.     Venue is proper in this Court under Fla. Stat. 47.051 because Sarasota County is where the cause of action accrued.

## FACTUAL ALLEGATIONS

17.     Rebecca purchased the Subject E-Bike through Amazon.com.

18.     The Subject E-Bike was manufactured by Defendant EXRBYKO.

19.     EXRBYKO used Defendants Amazon and Power to import, distribute and create a chain of distribution for the Subject E-Bike into the State of Florida.

20.     Thus, all Defendants were within the stream of distribution for the Subject E-Bike and are thus equally responsible for distributing the Subject E-Bike in its defective state.

21.     Rebecca followed the instructions for assembly of the Subject E-Bike, including the assembly of the Subject Bike's front axle.

22.     Rebecca provided the Subject E-Bike for C.B.'s use.

23.     On November 5, 2024, while C.B. was using the Subject E-Bike in an ordinary and foreseeable manner, the Subject E-Bike malfunctioned.

24.     Specifically, the Subject E-Bike's front wheel fell off the bike throwing C.B. from the Subject E-Bike causing him severe and life altering injuries.

25.     Defendants knew or should have known that the Subject E-Bike was defectively designed and/or defectively manufactured making it susceptible to this exact type of malfunction.

26.     This is because the Subject E-Bike's front axle system is defective in design and/or manufacture, because it fails to keep the front wheel secure when subject to the ordinary and

intended mechanical stresses.

27. Defendants each knew or should have known that the use of a traditional axle was insufficient for the Subject E-Bike, because the Subject E-Bike was heavier than a traditional bike and was intended to regularly reach speeds up to 33 miles per hour. The speeds that the Subject E-Bike reaches without any user effort reaches beyond the average speed of professional cyclists at events like the Tour De France.

28. However, unlike high performance bikes (including road bikes, mountain bikes, and other E-Bikes) the Subject E-Bike featured a quick release axle rather than a thru axle that is appropriate for high performance settings that the Subject E-Bike was expected to be used for.

29. Other feasible designs, including specifically thru axles, existed that would have prevented this type of malfunction and prevented this incident because they ensure the front wheel cannot come free during ordinary use while still allowing the primary benefit of quick release that traditional axles are designed to achieve.

30. For this reason, performance bikes, as alluded to above, no longer utilize traditional axles which are unsuitable and unreasonably dangerous for high performance use.

31. Thus, Defendants knew or should have known that the use of a traditional axle on a high-performance bike like the Subject E-Bike was unreasonably dangerous.

32. In fact, Defendant Amazon had specific knowledge of the defective front axle through product reviews and complaints from other consumers.

33. Defendant Amazon was also in a direct place to recall or warn end users of the danger that it knew or should have known about and had constructive knowledge about.

34. Furthermore, while traditional axles use fork dropouts, commonly referred to as "lawyers lips," that are designed to retain the axle in the open fork design if the quick release of a

traditional axle comes loose during use, the lawyers lips on the Subject E-Bike, either due to its defective design or manufacture failed to achieve their intended purpose to retain the axle in the dropout of the Subject Bike's fork.

35.    In other words, an ordinary consumer expects that the lawyer's lips of the bike will retain the front wheel in the dropout of the fork even when the axle comes loose during ordinary use. After all that is the purpose of this feature that is included on substantially all traditional axle bikes.

36.    Thus, the failure of the lawyer's lips to retain the axle during ordinary use constituted a malfunction that frustrated the expectations of an ordinary consumer.

37.    In turn, because as described above, the Subject E-Bike malfunctioned during ordinary use, there is an inference under Florida law that the Subject E-Bike was defective.

38.    The Subject E-Bike's defective design and/or manufacture was an actual and proximate cause of Plaintiff's injuries

39.    Further, Defendants also failed to provide adequate warnings to end users and intermediaries regarding the potential for the Subject E-Bike to malfunction and the resulting danger to end users.

40.    As a result, Plaintiff was not provided proper warnings or instructions to be advised of the dangerous nature of the Subject E-Bike nor any way to avoid the inherent dangers of the Subject E-Bike

41.    Had Plaintiff been aware of the defective nature of the Subject E-Bike she never would have purchased the Subject E-Bike for C.B.'s use. .

42.    Thus, Defendants' collective negligence to negligently design, manufacture, market, distribute, sell, and place the Subject E-Bike in the stream of commerce in a defective state

was an actual and proximate cause of Plaintiff's injuries

## AMAZON'S RELATIONSHIP TO THE SUBJECT E-BIKE

43.    While Amazon is likely to claim that it was merely acting as a website and not a product seller, accepting that claim would ignore reality.

44.    Amazon acted in the manner of a traditional retailer with respect to the Subject Bike. Specifically, Amazon:

a.    Facilitated the distribution and sale of the Subject Bike from its Chinese manufacturer.

b.    Promoted the distribution and sale of the Subject Bike through online advertisements and its algorithm designed to target and promote products to consumers.

c.    Established the chain of distribution for the Subject E-Bike without which the Subject E-Bike would not have reached Florida consumers.

d.    Undertook to assess product safety by controlling the product complaint and post market review of products including the recall process for the Subject E-Bike and the provision of warnings including any post-sale warnings.

e.    Controlled the behavior of its co-Defendants through its comprehensive product requirements and contractual agreements that it requires all manufacturers and distributors products comply with to sell products through its chain of distribution.

45.    The fact Amazon did not actually take title to the Subject E-Bike is also irrelevant for purposes of liability under Florida law. *See Samuel Friedland Family Enterprises v. Amoroso*, 630 So. 2d 1067, 1071 (Fla. 1994) (holding that the Diplomat hotel who did not own or take title to the sailboat could be held liable for products liability claims because it was within the chain of

distribution). Florida simply does not limit products liability claims to be consistent with the a set of defendants contractual agreements

46.    Rather, Florida holds those within the chain of distribution are liable for product defect. This is because those within the chain of distribution have the ability to "**implement procedures to avoid the distribution of defective products**." *See id.* (emphasis added).

47.    Amazon has also largely usurped the role of traditional retailers who have been previously found to be amenable to products liability actions through its internet marketplace that operates more efficiently than traditional retailers. Thus, Amazon's internet sales dominance fulfills the exact same purpose as a traditional retailer regardless of how Amazon chooses to define itself.

48.    In this case, Amazon was not just part of the chain of distribution, it was the chain of distribution for the Subject E-Bike. Amazon has established a dominant nationwide chain to distribute Chinese manufactured products directly into Florida and generates a substantial profit from its efforts to sell these products to Florida consumers.

49.    Amazon is also an entity directly able to "implement procedures to avoid the distribution of defective products" because Amazon not only is provided notice of product complaints, but also wields the power to remove unsafe products from its website to unilaterally prevent the distribution of defective products into the State of Florida.

50.    Thus, holding Amazon liable for product defect is not only essential to maintaining the historical protections that strict liability was intended to implement, but it is also entirely proper because Amazon has all the characteristics of an actor within the chain of distribution that Florida courts have used to determine who is amenable to products liability lawsuits.

## COUNT I—STRICT LIABILITY
### (Plaintiff Against Amazon)

51.     Plaintiff re-alleges and incorporates paragraphs 1 through 51 of this Complaint as if fully stated herein.

52.     Amazon is responsible advertising, distributing, and selling the Subject E-Bike and for otherwise placing the Subject E-Bike into the stream of commerce.

53.     The Subject E-Bike, the Subject E-Bike was defective in its design, manufacture, and warning.

54.     The Subject E-Bike was susceptible to malfunctions during use that would allow the front wheel to come free.

55.     Theis propensity to malfunction was the result of the defective design and/or manufacture of the Subject E-Bike.

56.     The propensity of the front wheel to come free during ordinary use rendered it unreasonably dangerous.

57.     Because the Subject E-Bike malfunctioned during ordinary use, there is an inference under Florida law that the Subject E-Bike was defective.

58.     Amazon also failed to provide adequate warnings and instructions for use to both inform users of the Subject E-Bike's propensity to suddenly malfunction and the resulting risk, but also to instruct or warn users how such malfunctions could be avoided to the extent that avoiding the malfunction was even possible given the defective design and/or manufacture.

59.     The Subject E-Bike's defective conditions rendered it unreasonably dangerous for its intended and foreseeable uses.

60.     The Subject E-Bike's defective conditions were each a proximate cause of C.B.'s injuries and damages.

**WHEREFORE**, Plaintiff, Rebecca Bailey, demands judgment against Defendant, Amazon for all injuries and damages sustained by C.B. as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, loss of consortium, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT II—NEGLIGENCE
### (Plaintiff Against Amazon)

61.     Plaintiff re-alleges and incorporates paragraphs 1 through 51 of this Complaint as if fully stated herein.

62.     Amazon is responsible advertising, distributing, and selling the Subject E-Bike and for otherwise placing the Subject E-Bike into the stream of commerce.

63.     Amazon had a duty to ensure the Subject E-Bike was distributed in a manner that left it free from any design or manufacturing defects that would cause the product to be unreasonably dangerous to users and bystanders.

64.     Amazon knew or should have known that due to its defective design and/or manufacture of the Subject E-Bike, that the Subject E-Bike was prone to malfunctions that would allow the front wheel to come free during ordinary use.

65.     Amazon knew or should have known that the propensity of the Subject E-Bike to malfunction placed users at an unreasonable risk of harm and rendered the Subject E-Bike unreasonably dangerous and thereby, defective under Florida law.

66.     Alternative designs existed that would prevent this type of malfunction and/or mitigate this type of malfunction.

67.     Thus, Amazon breached its duty of care under Florida law when it placed into the

stream of commerce the unreasonably dangerous Subject E-Bike that was defective in design and/or manufacture.

68. Additionally, Amazon was responsible for vetting and providing warnings and instructions to intermediaries and/or end users regarding the foreseeable risks associated with the Subject E-Bike

69. Amazon had a duty to ensure that the instructions and warnings for the Subject E-Bike were adequate.

70. Amazon knew or should have known about the Subject E-Bike's propensity to malfunction.

71. It was foreseeable to a reasonable manufacturer in Amazon's position that a malfunction of this type posed a substantial risk to end users and bystanders.

72. Thus, Amazon had a duty to warn of the propensity to malfunction and to provide adequate instructions to intermediaries, end users and/or bystanders on how to avoid or mitigate the risk of sudden malfunction.

73. Amazon breached its duty to warn by providing inadequate warnings and instructions to intermediaries, end users and bystanders that failed to warn about the potential for the Subject E-Bike to malfunction.

74. Amazon's breach of the above duties were each a proximate cause of C.B.'s injuries and damages.

**WHEREFORE**, Plaintiff, Rebecca Bailey, demands judgment against Defendant, Amazon for all injuries and damages sustained by C.B. as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, loss of consortium, mental anguish,

emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT III—NEGLIGENT UNDERTAKING
### (Plaintiff Against Amazon)

75.     Plaintiff re-alleges and incorporates paragraphs 1 through 51 of this Complaint as if fully stated herein.

76.     To the extent that Amazon did not have a duty to ensure the Subject E-Bike was safe for its consumers use purely based on its role in the distribution of the Subject E-Bike, Defendant undertook to provide services to protect Amazon users from the defective products through the requirements it placed on the co-Defendants to use its services. Consumers of Amazon reasonably relied on Amazon's service to monitor product complaints and remove unsafe consumer products to prevent the sale of defective products.

77.     Amazon negligently carried out this service by ignoring product complaint and safety issues with the Subject E-Bike that they had constructive knowledge of.

78.     Amazon negligently carries out this service by ignoring obvious design, manufacturing and warning defects that they would have been aware of had they actually fulfilled the obligations they assumed and promised consumers they would implement.

79.     Amazon's negligent undertaking of its duties that it gratuitously undertook to provide Plaintiff was a proximate cause of C.B's injuries and damages.

**WHEREFORE**, Plaintiff, Rebecca Bailey, demands judgment against Defendant, Amazon for all injuries and damages sustained by C.B. as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, loss of consortium, mental anguish,

emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT IV—STRICT LIABILITY
### (Plaintiff against EXRBYKO)

80.    Plaintiff re-alleges and incorporates paragraphs 1 through 51 of this Complaint as if fully stated herein.

81.    EXRBYKO is responsible for designing, manufacturing, distributing, and selling, the Subject E-Bike and for otherwise placing the Subject E-Bike into the stream of commerce.

82.    The Subject E-Bike, the Subject E-Bike was defective in its design, manufacture, and warning.

83.    The Subject E-Bike was susceptible to malfunctions during use that would allow the machine to violently move in an unintended manner.

84.    Theis propensity to malfunction was the result of the defective design and/or manufacture of the Subject E-Bike.

85.    Because the Subject E-Bike malfunctioned during ordinary use, there is an inference under Florida law that the Subject E-Bike was defective.

86.    EXRBYKO failed to provide adequate warnings and instructions for use to both inform users of the Subject E-Bike's propensity to suddenly malfunction and the resulting risk, but also to instruct or warn users how such malfunctions could be avoided to the extent that avoiding the malfunction was even possible given the defective design and/or manufacture.

87.    The Subject E-Bike's defective conditions rendered it unreasonably dangerous for its intended and foreseeable uses.

88.    The Subject E-Bike's defective conditions were each a proximate cause of C.B.'s injuries and damages.

**WHEREFORE**, Plaintiff, Rebecca Bailey, demands judgment against Defendant, EXRBYKO, for all injuries and damages sustained by C.B. as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, loss of consortium, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

**COUNT V—NEGLIGENCE**
**(Plaintiff against EXRBYKO)**

89.   Plaintiff re-alleges and incorporates paragraphs 1 through 51 of this Complaint as if fully stated herein.

90.   EXRBYKO is responsible for designing, manufacturing, packaging, and selling the Subject E-Bike, and for otherwise placing the Subject E-Bike into the stream of commerce.

91.   As a manufacturer within the stream of commerce, EXRBYKO had a duty to ensure that the design and manufacture of the Subject E-Bike left it free from any design or manufacturing defects that would cause the product to be unreasonably dangerous to users and bystanders.

92.   EXRBYKO knew or should have known that due to the defective design and/or manufacture of the Subject E-Bike, that the Subject E-Bike was prone to malfunctions that would allow the front wheel to come loose during ordinary use.

93.   EXRBYKO knew or should have known that the propensity of the Subject E-Bike to malfunction placed users and bystanders at an unreasonable risk of harm and rendered the Subject E-Bike unreasonably dangerous and thereby, defective under Florida law.

94.   Alternative designs existed that would prevent this type of malfunction and/or mitigate this type of malfunction.

95.     Thus, EXRBYKO breached its duty of care under Florida law when it placed into the stream of commerce the unreasonably dangerous Subject E-Bike that was defective in design and/or manufacture.

96.     Additionally, EXRBYKO is responsible for providing warnings and instructions to intermediaries and/or end users regarding the foreseeable risks associated with the Subject E-Bike and/or for ensuring that the instructions and warnings were adequate.

97.     To the extent that EXRBYKO relied on an intermediary to deliver any of its warnings to end users and/or to discharge this duty, EXRBYKO had a duty to ensure that the intermediary could be reasonably relied on to deliver such warnings to the users and bystanders in harm's way.

98.     EXRBYKO knew or should have known about the Subject E-Bike's propensity to malfunction.

99.     It was foreseeable to EXRBYKO that a malfunction of this type posed a substantial risk to end users.

100.    Thus, EXRBYKO had a duty to warn of the propensity to malfunction and to provide adequate instructions to intermediaries, end users on how to avoid or mitigate the risk of sudden malfunction.

101.    EXRBYKO breached its duty to warn by providing inadequate warnings and instructions to intermediaries, end users to warn about the potential for the Subject E-Bike to malfunction.

102.    EXRBYKO also had a duty to adequately instruct and warn about the proper service and maintenance of the Subject E-Bike to ensure it would remain in a proper working order free from any unreasonable risks to users and bystanders.

103.    It was foreseeable to EXRBYKO that failing to instruct end users on how to properly maintain the Subject E-Bike would create a risk of sudden malfunction.

104.    Dougguan breached these duties by providing the Subject E-Bike without adequate warnings and instructions.

105.    EXRBYKO breaches of the above duties were each a proximate cause of C.B.'s injuries and damages.

**WHEREFORE**, Plaintiff, Rebecca Bailey, demands judgment against Defendant, EXRBYKO, for all injuries and damages sustained by C.B. as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, loss of consortium, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT VI—STRICT LIABILITY
### (Plaintiff against Power)

106.    Plaintiff re-alleges and incorporates paragraphs 1 through 51 of this Complaint as if fully stated herein.

107.    Power is responsible for importing, distributing, selling, servicing and maintaining the Subject E-Bike and for otherwise placing the Subject E-Bike into the stream of commerce.

108.    The Subject E-Bike, the Subject E-Bike was defective in its design, manufacture, and warning.

109.    The Subject E-Bike was susceptible to malfunctions during use that would allow the machine to violently move in an unintended manner.

110.    Theis propensity to malfunction was the result of the defective design and/or

manufacture of the Subject E-Bike.

111.    Because the Subject E-Bike malfunctioned during ordinary use, there is an inference under Florida law that the Subject E-Bike was defective.

112.    Power failed to provide adequate warnings and instructions for use to both inform users of the Subject E-Bike's propensity to suddenly malfunction and the resulting risk, but also to instruct or warn users how such malfunctions could be avoided to the extent that avoiding the malfunction was even possible given the defective design and/or manufacture.

113.    The Subject E-Bike's defective conditions rendered it unreasonably dangerous for its intended and foreseeable uses.

114.    The Subject E-Bike's defective conditions were each a proximate cause of C.B's injuries and damages.

**WHEREFORE**, Plaintiff, Rebecca Bailey, demands judgment against Defendant, Power, for all injuries and damages sustained by C.B. as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, loss of consortium, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

**COUNT VII—NEGLIGENCE**
**(Plaintiff against Power)**

115.    Plaintiff re-alleges and incorporates paragraphs 1 through 51 of this Complaint as if fully stated herein.

116.    Power is responsible for importing, distributing, selling, servicing and maintaining the Subject E-Bike and for otherwise placing the Subject E-Bike into the stream of commerce..

117.    As an importing and distributor within the stream of commerce, Power had a duty

Page **18** of **20**

to ensure that the design and manufacture of the Subject E-Bike left it free from any design or manufacturing defects that would cause the product to be unreasonably dangerous to end users.

118.    Power knew or should have known that due to the defective design and/or manufacture of the Subject E-Bike, that the Subject E-Bike was prone to malfunctions that would allow the front wheel to come free during ordinary use.

119.    Power knew or should have known that the propensity of the Subject E-Bike to malfunction placed users at an unreasonable risk of harm and rendered the Subject E-Bike unreasonably dangerous and thereby, defective under Florida law.

120.    Alternative designs existed that would prevent this type of malfunction and/or mitigate this type of malfunction.

121.    Thus, Power breached its duty of care under Florida law when it placed into the stream of commerce the unreasonably dangerous Subject E-Bike that was defective in design and/or manufacture.

122.    Additionally, Power is responsible for providing warnings and instructions to intermediaries and/or end users regarding the foreseeable risks associated with the Subject E-Bike and/or for ensuring that the instructions and warnings provided with the Subject Bike were adequate.

123.    As an importer, and distributor, Power had a duty to ensure that the instructions and warnings for the Subject E-Bike were adequate.

124.    To the extent that Power relied on an intermediary to deliver any of its warnings to end users and/or to discharge this duty, Power had a duty to ensure that the intermediary could be reasonably relied on to deliver such warnings to the end users.

125.    Power knew or should have known about the Subject E-Bike's propensity to

malfunction creating a risk the front wheel would come loose during ordinary use.

126.    It was foreseeable to a reasonable importer and distributor in Power's position that a malfunction of this type posed a substantial risk to end users.

127.    Thus, Power had a duty to warn of the propensity to malfunction and to provide adequate instructions to intermediaries, end users on how to avoid or mitigate the risk of sudden malfunction.

128.    Power breached its duty to warn by providing inadequate warnings and instructions to intermediaries, end users that failed to warn about the propensity of the Subject E-Bike to malfunction and how to avoid this dangerous condition inherent in the defective design and manufacture of the Subject E-Bike.

129.    Power's breach of the above duties were each a proximate cause of C.B's injuries and damages.

**WHEREFORE**, Plaintiff, Rebecca Bailey, demands judgment against Defendant, Power, for all injuries and damages sustained by C.B. as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, loss of consortium, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

Dated: February 14, 2025                         Respectfully Submitted,

/s/ *Kristopher A. Bonham*
**Kristopher A Bonham, Esq.**
Florida Bar No.: 1010914
**Morgan & Morgan, P.A.**
1700 Palm Beach Lakes Blvd., Suite 500
West Palm Beach, FL 33401
Telephone: (561) 812-1547
Email: kbonham@forthepeople.com